UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------------X

CHRIS McCOLLOUGH,

                    Petitioner,

   -against-

FLOYD BENNETT, Superintendent,
Elmira Correctional Facility,

                 Respondent.

--------------------------------------------------------------------X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JAN 1 2 2010

P.M.
TIME A.M.

02-cv-5230

NOT FOR PRINT
OR ELECTRONIC
PUBLICATION

OPINION AND ORDER

ROSS, United States District Judge:

      Petitioner brings the instant action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his July 20, 1999 conviction in the Supreme Court of the State of New York, Queens County, following a jury trial, of Attempted Murder in the Second Degree, two counts of Criminal Possession of a Weapon in the Second Degree, two counts of Criminal Possession of a Weapon in the Third Degree, two counts of Menacing in the Second Degree, Assault in the Third Degree, Endangering the Welfare of a Child, Resisting Arrest, and Harassment in the Second Degree. Petitioner's claims include: (1) ineffective assistance of trial counsel for counsel's failure to investigate an Arrest Report Run and potential witnesses; (2) ineffective assistance of appellate counsel for failure to raise the claim of ineffective assistance of trial counsel on petitioner's direct appeal; and (3) that the trial court denied petitioner his constitutional rights to present a defense, confront witnesses, and to due process by declining to admit into evidence an Arrest Report Run. For the reasons that follow, the petition is denied.

1

# BACKGROUND

A. <u>Petitioner's Trial, Conviction, and Sentencing</u>

    1. *Events of January 14, 1998 and January 15, 1998*

On the afternoon of January 14, 1998, there was a fight between sixteen year old Kenneth Crawford and petitioner's stepson Jermaine Purvis outside of Crawford's home. (Tr. 300-02). Crawford stated that petitioner was present and punched Crawford in the face. (<u>Id</u>.) Crawford's family members, including his cousin Melvin Ledbetter and aunt Rene Crawford, ran out of the house and broke up the fight. Petitioner left, and after Crawford's family had gone back into the house, he returned and fired a shot in the direction of Crawford's house. (Tr. 308, 343.) Petitioner then ran away. (<u>Id</u>.) The police were called and they searched the area, but did not recover any bullets or shells. (Tr. 343-44.)

On January 15, 1998, Detective John Bommarito and his partner Police Officer Daniel Middleton were sitting in a patrol car on Jamaica Avenue in Queens, when Detective Bommarito saw petitioner come around the corner with a gun in his hand. (Tr. 430-31, 495.) Detective Bommarito saw petitioner point the gun toward the end of the block and pull the trigger. (Tr. 430.) He testified that there was a female five to ten feet in front of the petitioner,[1] and two other "kids" approximately twenty feet ahead. (Tr. 431.) The gun did not discharge. (Tr. 430-32.) Detective Bommarito and Officer Middleton got out of the car, pulled out their shields and guns, and shouted at petitioner to drop the gun. (Tr. 432, 495-97.) According to Officer Middleton, petitioner pointed the gun directly at Officer Middleton's chest and pulled the trigger, but the gun did not discharge. (Tr. 495-97.) Petitioner then dropped the gun and ran from the officers. (<u>Id</u>.)

---

[1] The witness identified this woman as someone later known to him as "Gwendolyn." (Tr. 431.)

The two "kids" identified by Detective Bommarito were Melvin Ledbetter and Rashene Davis, Kenneth Crawford's cousin and friend, respectively, who saw petitioner point the gun at Mr. Ledbetter (Tr. 378) and at Officer Middleton (Tr. 538.)

Detective Bommarito pursued petitioner while Officer Middleton picked up the gun petitioner had dropped and then pursued him. (Tr. 432, 497.) They apprehended petitioner around the corner. (Id.) The officers called for backup, and upon examining the gun at the scene, Detective Bommarito noticed that one bullet was in the barrel and another was in the chamber, and the gun was jammed. (Tr. 434.)

### 2. *Petitioner's Trial and the "Arrest Report Run"*

Petitioner proceeded to trial in the Supreme Court, Queens County. During cross examination, Detective Bommarito was shown a computer generated document entitled "New York City Police Dept. Arrest Report Run," which indicted that petitioner pointed a loaded firearm at an "unknown female" and that the weapon possessed by the petitioner was a "zip gun." (Petitioner's Supp. Br., Ex. E.) Detective Bommarito stated he had never seen the document before. (Tr. 470.) When asked whether at any point in the investigation it was alleged that petitioner possessed a zip gun, Detective Bommarito stated that there was not. (Tr. 472.)

During cross examination of ballistics expert Emil Antoniadis, defense counsel showed the same computer generated document to the witness and asked whether he had "seen this type of report before." (Tr. 571.) When the witness responded yes, defense counsel stated "[a]nd you know it's a report that's kept in the regular course of police business; isn't that so?" (Id.) The witness again answered yes, at which point defense counsel attempted to introduce the document

3

as evidence. (Id.) The court denied defense counsel's request, stating that counsel had not laid a proper foundation.

At sidebar, the prosecutor objected on hearsay grounds, indicated that the document was not generated by the police department, but was a "document generated by the district attorney's office in the intake bureau and kept by the DA's office in the DA file," and stated that it was a printout from the district attorney's computer. (Tr. 572.) After the trial judge specified the requirements for laying a foundation for business records, defense counsel requested that the district attorney's office make known the party who generated the report, and that he believed a proper foundation was laid by the testifying ballistics expert. (Tr. 573.) The trial judge stated that "there are more aspects to the proper foundation," to which defense counsel stated, "[m]ight I ask what the other aspects are?" (Tr. 574.) After the trial judge against stated the requirements, defense counsel again requested that the assistant district attorney who generated the report be disclosed. (Tr. 574.) The trial judge stated that the report was computer generated, and the prosecutor stated that it "looks like computer error." (Id.) The judge then repeated that counsel had not laid a proper foundation, after which defense counsel repeated his request for the district attorney who generated the report. (Tr. 574-75.) The prosecution responded that the form was not generated by an Assistant, but rather by support staff who get information from various reports. (Tr. 575.) Defense counsel repeated his request, after which the trial judge stated that the document was "not a police document," and that he thought the witness was "mistaken, by looking at it." (Tr. 576.) When defense counsel once again requested the name of a witness, the trial judge stated that "this is cross examination; perhaps you should have done it pre-trial." (Tr. 577.)

Defense counsel then stated that the prosecution had an obligation to provide a witness who generated the document as the document was exculpatory. (Id.) The prosecution denied that the material was exculpatory, and read into the record, outside the presence of the jury, what the document stated. The court then noted that the document was identified for appellate purposes, that it was "clearly not a police report and there's been insufficient foundation at this point." (Tr. 578.) When proceedings resumed, defense counsel made no further effort to admit the document, and both sides rested. (Tr. 579.)[2]

### 3. *Verdict and Sentence*

Following the trial, petitioner was convicted of Attempted Murder in the Second Degree (New York Penal Law §§ 110.00/125/25[1], two counts of Criminal Possession of a Weapon in the Second Degree (New York Penal Law § 265.02[4]), two counts of Criminal Possession of a Weapon in the Third Degree (New York Penal Law § 265.02[4]), two counts of Menacing in the Second Degree (New York Penal Law § 120.14[1]), Assault in the Third Degree (New York Penal Law § 120.00[1]), Endangering the Welfare of a Child (New York Penal Law § 260.10[1]), Resisting Arrest (New York Penal Law § 205.30),and Harassment in the Second Degree (New York Penal Law § 240.26[1]). Petitioner was sentenced on July 20, 1999 to, principally, twenty three years' imprisonment.

---

[2] Trial counsel again argued the issue of the admissibility of the Arrest Report Run when making a post-conviction motion under C.P.L. § 330 prior to sentencing. (Sentencing Tr. 4.) In denying the motion, the court stated that the Assistant District Attorney would not have known exactly who generated the document, but that petitioner need not call the maker, but could have called any individual would could have testified regarding the foundation that the record was kept, made in the ordinary course of business, that it was the ordinary course of business of the district attorney to make such a record, and that the declarants were under a business duty. (Sentencing Tr. 7.) The court found that petitioner failed to call such a witness, which resulted in the absence of a proper foundation. (Sentencing Tr. at 7-11.)

## B. Petitioner's Direct Appeal

On petitioner's direct appeal in the New York State Appellate Division, appellate counsel argued that the trial court had abrogated petitioner's rights to present a defense, to a fair trial, and to confrontation, when it excluded the Arrest Report Run from evidence, and prevented petitioner from laying a foundation for its admission, by improperly accepting the State's representation concerning the report, and cutting short petitioner's questioning of the State's ballistics expert. (App. Br. at 14.) Petitioner argued that the report was critical to his case because it contained information that could have been used to negate the loaded handgun element of the attempted murder and weapons charges, as well as to impeach the testifying officers' credibility. (Id.)

On May 14, 2001, the Appellate Division, Second Department, affirmed petitioner's judgment of conviction. People v. McCollough, 283 A.D. 2d 522 (2d Dept. 2001). The court found that the petitioner failed to lay a proper foundation for the document's admission, and that the trial court properly excluded the report from evidence.

On June 20, 2001, the New York Court of Appeals denied petitioner's request for leave to appeal. People v. McCollough, 96 N.Y.2d 865 (2001).

## C. Petitioner's Pro Se Petition for Writ of Habeas Corpus

In a pro se petition dated September 15, 2002 filed in this Court, petitioner sought a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner's arguments included a claim that petitioner was denied effective assistance of trial counsel. (Dkt. Entry 1.) On April 29, 2003, Magistrate Judge Bloom issued a stay ordering the petition held in abeyance and allowed

petitioner thirty days to file a post-judgment motion in the state courts to exhaust his claim of ineffective assistance of trial counsel. (Dkt. Entry 14.)

### D. Petitioner's Motion to Vacate Judgment

Petitioner then filed, *pro se*, a motion pursuant to C.P.L. § 440.10 to vacate his judgment of conviction. Petitioner argued that his trial counsel was ineffective for failing to admit into evidence the Arrest Report Run and for failing to investigate and determine an individual to call as a witness to lay the proper foundation for the report. Petitioner also presented unsworn letters from his stepson and common law wife and argued that his trial counsel erred in failing to present their testimony that petitioner was not present at the January 14, 1998 incident.[3]

On July 11, 2005, the New York State Supreme Court (Butcher, J.), denied petitioner's motion, finding it procedurally barred by C.P.L. § 440.10(2)(c), because the petitioner "could have raised the issues relating to the now alleged deficiencies in trial counsel's performance on his direct appeal since they are reflected in the record, but failed to do so." (Petitioner's Br., Ex. B.) The court also stated that even if it were to find petitioner's allegations true, it would find under the totality of the circumstances that defense counsel provided meaningful representation. (Id.) The court additionally found that the petitioner failed to support his claims with sworn allegations, and relied solely upon his own assertions. (Id.)

On March 8, 2006, the Appellate Division (Lunn, J.) denied petitioner's request for leave to appeal the denial of his motion to vacate.

---

[3] Petitioner also argued that defense counsel failed to obtain admission of a handwritten police report indicating that the petitioner pointed a gun at an "unknown female," failed to move to preclude the identification testimony of Renna Ledbetter on the ground that the State had not provided notice pursuant to C.P.L. § 710.30, and failed to have his own ballistics expert test the subject firearm.

E. Petitioner's Return to This Court

On May 22, 2006, petitioner wrote to Magistrate Judge Bloom, explaining that the Appellate Division had denied his request for leave. (Dkt. Entry 26.) After reviewing petitioners submissions, the state court record, and petitioner's October 25, 2007 request for an appointment of counsel, I appointed counsel to represent petitioner on November 13, 2007. (Dkt. Entry 68.) Subsequently, petitioner, through counsel, moved to hold petitioner's habeas petition in abeyance pending resolution in state court of an unexhausted claim of ineffective assistance of appellate counsel. After reviewing the parties' submissions relating to the stay, I granted petitioner's motion on December 23, 2008. (Dkt. Entry 83.)

F. Petitioner's Motion for a Writ of Error Coram Nobis

On February 19, 2009, petitioner filed a petition for a writ of error *coram nobis* in the New York State Appellate Division, Second Department, arguing that appellate counsel had provided ineffective assistance of counsel. Petitioner argued that appellate counsel failed to argue that trial counsel's performance was deficient for not adequately investigating and laying the proper foundation for the admission of the Arrest Report Run. (Petitioner's Coram Nobis Br. at 8.) On April 28, 2009, the Appellate Division denied petitioner's *coram nobis* petition, finding that the petitioner "has failed to establish that he was denied the effective assistance of appellate counsel." People v. McCollough, 61 A.D.3d 999 (2d Dept. 2009). Leave to appeal the decision was denied on July 14, 2009.

G. Petitioner's Instant Petition

On September 20, 2009, petitioner filed a Supplemental Brief with this Court, arguing that (1) trial counsel was ineffective for failure to investigate the Arrest Report Run and potential witnesses; (2) appellate counsel was ineffective for failure to raise the claim of ineffective assistance of trial counsel on petitioner's direct appeal; and (3) that the trial court denied petitioner his constitutional rights to present a defense, to confront witnesses, and to due process by declining to admit into evidence the Arrest Report Run.

The State first argues that petitioner's claim of ineffective assistance of trial counsel for failure to investigate the Arrest Report Run is procedurally barred, and that the Court should not examine the claim on the merits. (Govt.'s Mot. at 10.) The State further claims that petitioner's argument that his trial counsel was ineffective for failure to investigate potential witnesses was decided on the merits against him, and the state court's decision neither contravened or unreasonably applied clearly established federal law. (Id. at 11.) Second, the State argues that the state courts neither contravened nor unreasonably applied clearly established federal law when they rejected petitioner's claim of ineffective assistance of appellate counsel. Finally, the State argues that petitioners' third claim does not raise constitutional issues, and in the alternative, the New York courts properly applied New York evidentiary law. (Id.)

## DISCUSSION

### A. Petitioner's Claim of Ineffective Assistance of Trial Counsel

1. *Petitioner's Claim of Ineffective Assistance of Trial Counsel for Failure to Investigate the Arrest Report Run*

    i. Procedural Bar Under New York Law

Petitioner first alleges that trial counsel was ineffective for failing to sufficiently investigate in order to determine the correct witness to lay the foundation for the admission of the Arrest Report Run. (Petitioner's Supp. Br. at 14.) Petitioner raised this argument in his motion to vacate pursuant to C.P.L. § 440.10, where the court found the claim was procedurally barred by C.P.L. § 440.10(2)(c), because the petitioner could have raised the issues on his direct appeal, but failed to do so. (Petitioner's Supp. Br., Ex. B.) The court also stated that even if it were to find petitioner's allegations true, it would find under the totality of the circumstances that defense counsel provided meaningful representation and that the petitioner failed to support his claims with sworn allegations. (Id.) Petitioner now argues that his ineffective assistance of trial counsel claim is an off-record claim that was properly brought as a § 440.10 motion, and that that state court's finding is not an adequate procedural bar to this Court's review of the merits of the claim. The State argues that the ineffective assistance of trial counsel claim is an on-the-record claim that was properly barred by the state court under C.P.L. § 440.10(2)(c).

Federal habeas review is not available where a claim has already been decided by a state court, and the state court's decision "rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729 (1991). Federal courts may not review state court decisions that rest on an adequate and independent state procedural default unless petitioner can show both cause and prejudice or a fundamental miscarriage of justice. Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 809 (2d Cir.

10

2000) (citing Coleman, 501 U.S. at 749-50; Harris v. Reed, 489 U.S. 255, 262 (1989)). To determine whether the state court found petitioner's claim to be procedurally defaulted under state law, a court must look to the last reasoned state court opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). In order for federal review to be procedurally barred, the state court's reliance on state law must be "clear from the face of the opinion." Fama, 235 F.3d at 809 (internal quotation marks and citation omitted); see also Jones v. Vacco, 126 F.3d 408, 415 (2d Cir.1997) (explaining that, "in order to preclude federal review, the last state court to render judgment must clearly and expressly state that its judgment rested on a state procedural bar") (internal quotation marks and citation omitted); Chappero v. West, 2009 WL 2058534 (S.D.N.Y. 2009). If the last reasoned state court opinion was based upon an independent and adequate state-law ground, the claim will be procedurally barred from federal habeas review.

New York law holds that when evidence supporting a claim is on the record and reviewable by an appellate court on a defendant's direct appeal, but the defendant fails to raise the claim, then the claim cannot be brought in a later post-conviction motion under § 440.10. Byron v. Ercole, 2008 WL 2795898, *13 (E.D.N.Y. 2008); C.P.L. § 440.10(2)(c). "Thus, where a claim of ineffective assistance of counsel is clearly established in the trial record, a state court's reliance on subsection (2)(c) provides an independent and adequate procedural bar to federal habeas review." Byron, 2008 WL 2795898 at *13 (citing Murden v. Artuz, 497 F.3d 178, 196 (2d Cir. 2007)). On the other hand, not every claim of ineffective assistance of counsel will be "sufficiently presented in a trial record." Murden, 497 F.3d at 196. When such claims are based on matters outside the record, and not reviewable on direct appeal, New York law requires that they "be pursued by way of a CPL § 440.10 motion." Quinones v. Miller, 2003 WL 21276429, at *21 (S.D.N.Y. 2003) (quoting People v. Kazmirski, 299 A.D.2d 826, 827 (4th Dept. 2002);

11

Byron, 2008 WL 2795898 at * 13. "Where the ineffective assistance of counsel claim is not record-based, federal habeas courts have held that the rule of CPL § 440.10(2)(c) is not adequate" to bar habeas review. Byron, 2008 WL 2795898 at *13 (quoting Serrano v. Senkowski, 2004 U.S. Dist. LEXIS 18936, at *35-36 (S.D.N.Y. 2004).

Petitioner categorizes trial counsel's deficient performance with respect to the Arrest Report Run as a failure to locate and investigate a proper witness to lay the foundation for the document's admission, which he asserts is an "off-record" claim. Courts have held that since "an attorney's failure to locate and investigate witnesses does not adequately appear on the record of the criminal proceedings, the petitioner will not be precluded under CPL § 440.10(2)(c) from bringing a motion to vacate based on his failure to raise the claim on direct appeal." Bonilla v. Portuondo, 2004 WL 350694, at *15 (S.D.N.Y. 2004) (citing Rowe v. State of New York, 2001 WL 1606744, at *4-5 (S.D.N.Y. 2001)); see also People v. Haynes, 39 A.D.3d 562, 564 (2d Dept. 2007) ("The defendant's claim of ineffective assistance of counsel, to the extent that it is premised on his attorney's alleged failure to investigate and call certain witnesses, involves matters which are dehors the record and are not properly presented on direct appeal."). Bonilla, for example, involved a trial counsel's failure to call defense witnesses and locate three witnesses whose testimony would have undermined the credibility of the single eyewitness. Bonilla, 2004 WL 350694, at *3. New York law, however, is less clear as to whether failure to lay a proper foundation for a business record through a foundation witness is an "off-record" matter.

Respondent points to case law where the trial record provided a sufficient basis for an ineffective assistance of trial counsel claim on direct appeal, and asserts that petitioner's claim is such a case. In Sweet v. Bennett, 353 F.3d 135, 140 (2d Cir. 2003), the petitioner alleged that

trial counsel erred in failing to object to an inconsistency in the jury charge. The Second Circuit found under the circumstances that such an error was clear from the record, and no new evidentiary hearing would be required to develop the claim. Sweet, 353 F.3d at 140. Thus, the claim was procedurally defaulted for the purposes of federal habeas review. Id.; see also Aparicio v. Artuz, 269 F.3d 78, 91 (2d Cir. 2001) (finding that § 440.10(2)(c) barred a collateral claim of ineffective assistance of counsel for failure to object on double jeopardy grounds as defendant failed to raise the ineffective assistance of counsel claim on direct appeal).

In the instant case, it is clear from the trial record that counsel did in fact fail to call a proper foundation witness. However, because the prejudice prong of an ineffective assistance of counsel claim would require that petitioner show that a potential foundation witness does exist and that the document is admissible, petitioner's claim inherently involves off-record assertions and facts. See Bonilla, 2004 WL 350694, at *3; Byron, 2008 WL 2795898 at *13.[4] Accordingly, I find that petitioner's claim is not procedurally barred under § 440.10(2)(c).

### ii.  The Merits of Petitioner's Claim

In order to demonstrate ineffective assistance of counsel, the petitioner must satisfy the two prong test established in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, a petitioner must demonstrate, first, that counsel's performance fell below "an objective standard

---

[4] See also People v. Mendoza, 298 A.D.2d 532, 533, 748 N.Y.S.2d 666, 666-67 (2d Dept.) (because "defendant's [ineffective counsel] claim involves affidavits and other matters dehors the record which could not be reviewed on direct appeal . . . defendant was not procedurally barred from moving pursuant to CPL 440.10 to vacate the judgment of conviction."), appeal denied, 99 N.Y.2d 561, 754 N.Y.S.2d 213 (2002); People v. Taborn, 292 A.D.2d 200, 201, 738 N.Y.S.2d 216, 216 (1st Dept.) ("Since defendant's ineffective assistance claim rests largely on allegations dehors the record concerning matters of strategy, preparation of witnesses and consultations between defendant and counsel, it would require a CPL 440.10 motion ...."), appeal denied, 98 N.Y.2d 713, 749 N.Y.S.2d 11 (2002); People v. Delarosa, 287 A.D.2d 735, 736, 732 N.Y.S.2d 108, 110 (2d Dept. 2001) (claim that trial counsel was ineffective for failing to serve a timely alibi notice involves "matters dehors the record which could not be reviewed on direct appeal" and, therefore, should not have been held procedurally barred under C.P.L. § 440.10(2)(b)).

of reasonableness" under "prevailing professional norms," id. at 688, and second, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 698. A court need not decide both prongs of the Strickland test for ineffective assistance of counsel if a party has made an insufficient showing on one. See Id. at 697.

Petitioner alleges that trial counsel was unaware of what was required under the rules of evidence, and thus failed to investigate a witness to lay the foundation for admission of the Arrest Report Run under the business record exception to the hearsay rule. Trial counsel attempted to admit the report after the ballistics expert testified that he had seen this type of report before, and that he knew "it's a report that's kept in the regular course of business." (Tr. 571.) After defense counsel asked the court what more was required in order to lay the proper foundation, the trial court informed defense counsel that the requirements for laying a proper foundation included a showing that the "person who made the entries was under a business duty to make such entries," and found that defense counsel failed to make such a showing. (Tr. at 573-74.) Petitioner further alleges that trial counsel's failure to properly lay the foundation for the report resulted in prejudice, as the indication that petitioner had fired a "zip gun" and that there was a female victim contradicted the testimony of the prosecution's witnesses that petitioner was carrying a loaded semi-automatic weapon and aimed it at two individuals.

Courts have found that trial counsel has a duty to make "reasonable investigations," and "learn enough" about reports to determine their use at trial. See Kimmelman v. Morrison, 477 U.S. 365, 383 (1986); Dorsey v. Kelly, 1997 WL 400211, at *7 (S.D.N.Y. 1997) ("Not introducing the reports was unreasonable under professional norms, resulting as it apparently did from petitioner's counsel's failure to apprehend the exculpatory inference that could be drawn

14

from the reports."). Trial counsel also has the duty to investigate, which "includes the obligation to investigate all witnesses who may have information concerning [the defendant's] guilt or innocence." Rosario v. Ercole, 582 F. Supp. 2d 541, 575 (S.D.N.Y. 2008) (quoting Towns v. Smith, 395 F.3d 251, 258 (6th Cir.2005)).

An inquiry into trial counsel's performance, however, is unnecessary given that petitioner has failed to meet his burden to show that he was prejudiced by the failure to admit the Arrest Report Run in question. See Strickland, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."). Under the prejudice prong of the Strickland standard, petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 698. To succeed on such a claim in the instant case, petitioner would first have to show that the Arrest Report Run was, in fact, admissible as a police business record and that a proper foundation could, in fact, have been laid. In his attempt to establish this, petitioner has provided an affidavit from Lawrence Frost, a private investigator who forwarded the document to a "source" within the police department and inquired of him whether "in his opinion," the document was a "computer printout from the booking arraignment disposition system ("BADS") generated by the NYPD." (Aff. of Lawrence Frost, Petitioner's Supp. Br. at Ex. D) ("Frost Affidavit"). The affidavit also states that the "source" questioned an Assistant District Attorney from Queens, who "advised that this was an NYPD document with no input availability for the District Attorney's office." (Id.)

Respondent claims that the Frost Affidavit provided by petitioner is "new evidence" that was not presented to the New York courts, and is thus not reviewable by this Court. Under 28

U.S.C. § 2254(e)(2), a federal court reviewing a habeas petition may not rely on evidence that was not presented to the state courts unless the petitioner can show that (1) he was diligent in seeking to develop his claims in the state courts, or (2) he satisfies the conditions set forth in § 2254(e)(2). Holland v. Jackson, 542 U.S. 649 (2004). Petitioner claims that the affidavit is not "new evidence," rather it merely attempts to further demonstrate a claim petitioner has asserted in state proceedings: that the report is a police report generated by the NYPD. Petitioner further claims that he was diligent in his state court proceedings by presenting, *pro se*, the factual basis of his claim and seeking an evidentiary hearing.

Petitioner did present his argument that the Arrest Report Run was an NYPD report to the State Courts in his motion to vacate. (Petitioner's Reply Br. at Ex. A-2.) Petitioner, acting *pro se*, further included an NYPD "Patrol Guide" in an attempt to show that post-arrest procedures include the preparation of reports such as the one in question. (Id.) Additionally, the affidavit simply asserts that the record in question is an NYPD record, and thus does not "fundamentally alter" petitioner's assertion. Accordingly, I find that I may review the contents of the affidavit for purposes of petitioner's ineffective assistance claim. See Jones v. Keane, 329 F.3d 290 (2d Cir. 2003) (holding that the "claim presented to the state court . . . must be the 'substantial equivalent' of the claim raised in the federal habeas petition") (internal citations omitted); see also Richey v. Bradshaw, 498 F.3d 344 (6th Cir. 2007) (on remand, finding that petitioner had been diligent in attempting to develop his claim in state court and that supplemental evidence presented by petitioner did not fundamentally alter ineffective-assistance claim, which was premised on same theory as that presented to state courts).

Despite my ability to consider the Frost affidavit, however, the affidavit is not sufficient to meet petitioner's burden under the prejudice prong of Strickland. Under New York law, a

16

police report is admissible as proof of the facts contained therein, if "'(1) the entrant of those facts was the witness, or (2) the person giving the entrant the information was under a business duty to relate the facts to the entrant.'" Lynn v. Bliden, 443 F.3d 238, 252 (2d Cir. 2006) (quoting Donohue v. Losito, 141 A.D.2d 691, 692 (2d Dept. 1988)); see also People v. Morgan, 174 A.D.2d 1034 (4th Dept. 1991) (finding that a "police report made by another officer would have been admissible as a business record had the People laid a proper foundation"). Through the submitted affidavit, petitioner attempts to cure the hearsay concerns of the trial court with additional hearsay -- that is, through "information and belief" provided through unnamed, second-hand sources. By simply declaring that the Arrest Report Run is a police document that would be admissible as a business record, without demonstrating by an appropriate evidentiary showing that there is a specific declarant who could testify that it was a record kept in the regular course of police business and that the declarant was under a business duty to prepare the document, petitioner has failed to show that a proper foundation could have been laid to admit the document. Nor has petitioner submitted to the state courts or to this court any additional evidence that a proper foundation witness can testify that the report is an NYPD report admissible as a business record. Petitioner's investigator's hearsay declarations to the court based on statements of unidentified sources go no further than petitioner's previous failed efforts to lay an appropriate foundation. As a result, petitioner cannot meet his burden under the prejudice prong of Strickland to establish that the report is first and foremost admissible, and thus cannot show that the outcome of the proceedings would have differed. Accordingly, his claim is denied.

2. *Petitioner's Claim of Ineffective Assistance of Trial Counsel for Failure to Investigate Potential Witnesses*

Petitioner also raises a claim of ineffective assistance based on trial counsel's failure to investigate several potential witnesses for the defense. The State claims that petitioner's argument that his trial counsel was ineffective for failure to investigate potential witnesses was decided on the merits against him, and the state court's decision neither contravened, nor unreasonably applied, clearly established federal law.

i. Standard of Review

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), enacted in 1996, established a deferential standard that federal habeas courts must apply when reviewing state court convictions. 28 U.S.C. § 2254(d). The statute provides, in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id. The statutory language "clearly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" clearly established Supreme Court precedent if "the state court applies a rule that contradicts" Supreme Court precedent or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme]

18

Court and nevertheless arrives at a result different from that precedent." Id. at 405-06. With respect to the "unreasonable application" clause, "a federal habeas court . . . should ask whether the state court's application of clearly established federal law was objectively reasonable." Id. at 409. In determining whether an application was objectively unreasonable, "the most important point is that an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410. Interpreting Williams, the Second Circuit has added that, although "[s]ome increment of incorrectness beyond error is required[,] . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks and citations omitted).

As stated above, in order to demonstrate ineffective assistance of counsel, petitioner must satisfy the two-pronged test established in Strickland, 466 U.S. 668 (1984). In analyzing a claim that counsel's performance fell short of constitutional standards, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Moreover, "[i]n assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct, and may not use hindsight to second-guess his strategy choices.'" Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (quoting Strickland, 466 U.S. at 690). Thus, a petitioner cannot prevail on a claim of ineffective assistance merely because he disagrees with his counsel's strategy. See Strickland, 466 U.S. at 689. However, failure to pursue a particular course of action is not considered strategic when it is not a "conscious, reasonably informed decision made by an attorney with an eye to benefitting his client." See Pavel v. Hollins, 261 F.3d 210, 218 (2d Cir. 2001).

ii. The Merits of Petitioner's Claim

Petitioner claims that trial counsel failed to adequately investigate several potential witnesses, including petitioner's stepson, Jermaine Purvis, his common law wife, Gwendolyn Langston, another individual named Theo, and "two other people who wanted to testify on Mr. McCollough's behalf." (Petitioner's Supp. Br. At 11.) Petitioner alleges that these witnesses would have testified that petitioner knew nothing about, and was not present at, the January 14th incident between petitioner's stepson and Kenneth Crawford that precipitated the charges against him. (Id.)

Defense counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 690-91. Counsel's duty to investigate "includes the obligation to investigate all witnesses who may have information concerning [the defendant's] guilt or innocence." Rosario, 582 F. Supp. 2d at 575 (quoting Towns, 395 F.3d at 258). A failure to investigate alibi witnesses is particularly egregious. See Pavel, 261 F.3d at 220-22 & nn. 13-14; see also Lindstadt v. Keane, 239 F.3d 191, 199-204 (2d Cir.2001). The decision not to call a particular witness is typically a question of trial strategy, and courts have been especially hesitant to disturb such "strategic" decisions. Pavel, 261 F.3d at 217 (citing Trapnell v. United States, 725 F.2d 149, 155 (2d Cir.1983)); see also Strickland, 466 U.S. at 690 ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable"). "[A]n unexplained failure to call credible alibi witnesses cannot be considered reasonable trial strategy." Pena-Martinez v. Duncan, 112 Fed.Appx. 113, 114 (2d Cir. 2004) (citing Pavel, 261 F.3d at 217-20).

While no affidavit was obtained from trial counsel in the state court proceedings,[5] two of the potential witnesses, Jermaine Purvis and Gwendolyn Langston, submitted notarized letters alleging that they had explained their potential testimony to trial counsel. Ms. Langston wrote that she and petitioner were in the house all day on the 14th of January, and that on the 15th of January, she and petitioner were walking to the store when they were approached by two men who later arrested petitioner. (Letter of Gwendolyn Langston, Petitioner's Supp. Br. at Ex. F.) She also wrote that "I explained all that happened to [petitioner's] attorney, and asked him to let me testify on [petitioner's] behalf." (Id.) She further wrote that "Mr. Greene never called me to testify and told me not to come to court at all unless he tells me to." (Id.) Mr. Purvis wrote that petitioner was not present during the events of January 14, 1998, and that "[m]y mother took me to tell Mr. Greene what had happened. I told him that my parents did not know anything about the fight I had." (Letter of Jermaine Purvis, Petitioner's Supp. Br. at Ex. F.) To the extent petitioner's claim is based on the shortcomings of trial counsel's investigation into potential witnesses, the proffered letters indicate that trial counsel undertook a sufficient investigation into the potential witness testimony under the Strickland standard. The letters attest to counsel's conversations with Ms. Langston and Mr. Purvis about potential defense testimony.

---

[5] The Court has considered whether to hold an evidentiary hearing to afford petitioner's trial counsel an opportunity to defend his conduct. See Wilson v. Mazzuca, 570 F.3d 490, 497 (2d Cir. 2009) ("We believe that a district court facing the question of constitutional ineffectiveness of counsel should, except in highly unusual circumstances, offer the asserted ineffective attorney an opportunity to be heard and to present evidence, in the form of live testimony, affidavits, or briefs." (quoting Sparman v. Edwards, 154 F.3d 51, 52 (2d Cir.1998))). However, as discussed below, petitioner has not carried his initial burden of showing a failure to investigate that gives rise to a plausible ineffective assistance claim. As a result, the court finds the record sufficient without an affidavit or testimony from trial counsel. See United States v. Tarricone, 996 F.2d 1414, 1418 (2d Cir.1993) ("To prevail on his motion for a[n evidentiary] hearing, Barberio must establish that he has a 'plausible' claim of ineffective assistance of counsel."); Chin v. U.S., 2009 WL 3380725, at *9, n.8 (E.D.N.Y. 2009).

Accordingly, petitioner has not met his burden to show that counsel failed in his duty to make reasonable investigations.[6]

As to the "two other people who wanted to testify on Mr. McCollough's behalf," petitioner still does not specify who these witnesses are, or of what their testimony would have consisted. Petitioner states that an individual named Theo would have verified Ms. Langston's account, but does not offer a declaration from this individual, nor is it clear from the record where this individual was at the time the events unfolded.[7] While Ms. Langston's letter states that "Mr. Greene told them to stay away from the court also," such a statement is not sufficient to establish the claim that potential exculpatory witnesses exist for purposes of an ineffective assistance of counsel claim for failure to investigate those witnesses.

Accordingly, I find that the state court did not contravene or unreasonably apply clearly established federal law in denying petitioner's motion to vacate.

## B. Petitioner's Claim of Ineffective Assistance of Appellate Counsel

Petitioner argues that in the event his ineffective assistance of *trial* counsel claim is found to be "on-record" and thus appealable directly, that he suffered from ineffective assistance of *appellate* counsel for counsel's failure to raise the claim. Petitioner raised this claim in his coram nobis petition, where the court found that he had "failed to establish that he was denied

---

[6] In his original *pro se* habeas petition, petitioner raises a claim that defense counsel "never call any witness on Defendants behalf," who allegedly knew that petitioner had nothing to do with the fight of January 14th. As stated above, "an unexplained failure to call credible alibi witnesses cannot be considered reasonable trial strategy." Pena-Martinez, 112 Fed.Appx. at 114 (citing Pavel, 261 F.3d at 217-20). However, Ms. Langston's and Mr. Purvel's unsworn letters do not sufficiently establish the existence of credible alibi evidence such that an ineffective assistance of counsel claim can be asserted. See, e.g., Dupont v. United States, 224 Fed.Appx. 80, 82 (2d Cir. 2007) (". . . defendant failed credibly to establish the existence of alibi evidence at the time of trial. Absent such evidence, there is no basis for defendant's ineffective assistance claim.").

[7] In his 440 motion, petitioner wrote that "Theo . . . was near by when and seen defendant get arrested on 1/15/98 . . . ." (Petitioner's Mot. to Vacate, Dkt. Entry 100-1 at 24.)

22

the effective assistance of appellate counsel." People v. McCollough, 61 A.D.3d 999 (2d Dept. 2009). Respondent argues that the New York court reached the merits of this claim, but neither contravened nor unreasonably applied clearly established federal law in rejecting petitioner's motion.

A criminal defendant has a right to the effective assistance of counsel on a first appeal as of right. Evitts v. Lucey, 469 U.S. 387, 396 (1985). When a defendant challenges the adequacy of representation by such appellate counsel, a court must review his claim under the standards for review of the performance of trial counsel. Abdurrahman v. Henderson, 897 F.2d 71, 74 (2d Cir.1990). That is, to prevail on a claim of ineffective assistance of appellate counsel, a defendant must demonstrate that his attorney's "representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 687-88, 694.

As discussed above, because petitioner framed his ineffective assistance of *trial* counsel claim as a failure to investigate potential foundation witnesses, I found his claim to be "off-record" and thus not procedurally barred under C.P.L. § 440.10(2)(c). Thus, I need not reach petitioner's alternative claim that appellate counsel performed deficiently for failure to raise an ineffective assistance of trial counsel claim on direct appeal. Additionally, having reached the merits of petitioner's ineffective assistance of *trial* counsel claim, I found that petitioner had failed to establish prejudice because he has not shown that a foundation witness actually exists that renders the document in question admissible. As a result, "there can be no claim of ineffective assistance of *appellate* counsel where the underlying claims of ineffective assistance

of *trial* counsel are themselves meritless." <u>Rolling v. Fischer</u>, 433 F.Supp.2d 336, 351 (S.D.N.Y., 2006) (emphasis added). Accordingly, petitioner's claim is denied.


## C. Petitioner's Additional Constitutional Claims

Petitioner alleges that the Appellate Division on direct appeal did not address petitioner's constitutional claims with respect to the trial court's preclusion of the Arrest Report Run. Specifically, petitioner alleges that in finding the police report inadmissible, the trial court infringed upon petitioner's right to present a defense, cross-examine witnesses, and to due process. Petitioner argues that the Assistant District Attorney made false representations that the report was a document generated by the District Attorney's office rather than the NYPD, and the trial court erred in accepting that categorization of the document. Additionally, petitioner finds that the trial court's statements that the document was "clearly not a police report" and that the ballistics expert who testified was "mistaken," infringed on his constitutional rights.

Despite these statements by the trial court, the court simply found that "there's been insufficient foundation at this point." (Tr. 568.) The trial court made an evidentiary ruling that the petitioner had failed to lay the proper foundation for the admission of the Arrest Report Run as a business record. (<u>Id.</u>) As stated above, under New York law, a police report is admissible as proof of the facts contained therein, if "'(1) the entrant of those facts was the witness, or (2) the person giving the entrant the information was under a business duty to relate the facts to the entrant.'" <u>Lynn</u>, 443 F.3d at 252 (internal quotations omitted). However the court categorized the report, and regardless of the statements of the prosecutor, defense counsel did not succeed in laying the proper foundation for the document's admission by having a witness sufficiently testify that the declarant was under a business duty to make the entries.

24

Although the Constitution plainly requires that a criminal defendant be afforded "a meaningful opportunity to present a complete defense," see Crane v. Kentucky, 476 U.S. 683, 690 (1986), the right is not unlimited. Rodriguez v. Artuz, 123 Fed.Appx. 428, 430 (2d Cir. 2005). Specifically, a defendant "does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." Taylor v. Illinois, 484 U.S. 400 (1988); see also United States v. Almonte, 956 F.2d 27, 30 (2d Cir.1992). The Supreme Court has stated "that it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Thus, unless a claim under Crawford v. Washington, 541 U.S. 36 (2004), is alleged, there is a "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts," unless the error was so pervasive that the criminal defendant was denied a fundamentally fair trial. Crane, 476 U.S. at 689-90; see also Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985).

In his trial, petitioner was able to fully cross examine all witnesses against him, was provided the opportunity to present a defense, and has not shown that the trial court's evidentiary ruling was an error so pervasive as to deny him a fair trial. Accordingly, the Appellate Court's ruling based on the State's rules of evidence does not create a constitutional claim reviewable by this Court.

## CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is denied. Because petitioner has failed to make a "substantial showing of the denial of a constitutional right," 28

U.S.C. § 2253(c)(2) (1996), no certificate of appealability will be granted. The Clerk of Court is directed to enter judgment accordingly.

SO ORDERED.

Allyne R. Ross
United States District Judge

Dated:      January 11, 2010
            Brooklyn, New York